Micaelina ORTIZ, Plaintiff–Appellant,

v.

JOHN O. BUTLER COMPANY,
Defendant–Appellee.

No. 95–2828.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1996.

Decided Sept. 9, 1996.

Herbert H. Victor, Andrey Filipowicz (argued), Chicago, IL, for plaintiff–appellant.

Michael D. Sher (argued), Eugene A. Boyle, Harvey M. Adelstein, Neal, Gerber & Eisenberg, Chicago, IL, for defendant–appellee.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Micaelina Ortiz sued John O. Butler Company, alleging that Butler violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by terminating her employment in retaliation for her making complaints regarding what she alleges were hostile and discriminatory working conditions. The district court granted summary judgment in favor of Butler on the ground that Ortiz's claim was moot because, even if she prevailed, she would not be entitled to any damages. Ortiz appeals, and we affirm.

I

Butler is a manufacturer and distributor of oral hygiene products. Ortiz was employed at Butler from February 17, 1982, until she was terminated on April 6, 1992.

In mid-March 1992, two anonymous letters were submitted to Butler's management complaining about the working conditions in the molding department. The letters made numerous accusations against the molding department supervisors, including allegations that the supervisors reprimanded the employees with obscenities, threatened employees with verbal and mental abuse, and sexually harassed employees. In response to the two letters, Butler management conducted an audit of the molding department personnel in order to investigate the complaints. The audit consisted of Susan Bondy, the director of human resources, and William Spangler, the director of operations, jointly conducting interviews of the molding department employees over a two-week period. During the interviews, the audit team asked the employees questions about their work environment in general and whether they had any knowledge of any incidents of sexual harassment.

During the audit, the employees did not confirm the allegations of discrimination made in the two letters. While several employees complained about their supervisors' harsh language, each of the first-shift employees, including Ortiz, specifically denied that any of their supervisors ever had discriminated against them or made comments of a sexual nature to them or to others.

In addition, during their audit interviews several employees identified Ortiz as having written one of the two anonymous letters, having asked them to sign a letter, or having asked them to lie about incidents of sexual harassment during the audit interviews so that their supervisors would be fired. In order to investigate these accusations, Bondy and Spangler conducted a follow-up interview with Ortiz. In the second interview, Ortiz denied that she was involved in the drafting of either of the two letters complaining about the working conditions at Butler and denied that she solicited anyone to sign either letter.

After the audit was completed, Butler accused Ortiz and others of intentionally and maliciously creating and disseminating false claims of sexual harassment in order to discredit their supervisors and get them fired. Butler suspended all the employees, including Ortiz, believed to be involved in the alleged creation of the falsehoods. At individual meetings these employees were advised of their one-day suspension and were asked to reflect upon their conduct and to decide whether they were committed to Butler or whether they wished to resign and receive severance pay.

After the suspension period, Bondy and Spangler again met privately with each of the three employees who had served their suspensions. The two other employees admitted their involvement in the letter-writing scheme, but Ortiz denied that she had done anything. Ortiz was then informed that because of her unwillingness to accept any responsibility for her conduct relating to the letters and her inability to get along with her coemployees, which had been a documented and continuing problem, her employment at Butler was terminated. Ortiz's termination was the subject of an NLRB claim, upon which Ortiz and Butler reached a settlement.

Ortiz subsequently sued Butler under Title VII, alleging that Butler unlawfully discharged her in retaliation for her exercise of her protected rights, admitting that she had, in fact, participated in writing the second letter. In her supplemental damage state-

ment to the final pretrial order, Ortiz identified three categories of damages to which she was entitled: (1) lost wages and benefits in the amount of $15,350.40, less the settlement of the NLRB claim for the same lost wages and benefits in the amount of $16,000, resulting in total lost wages and benefits of negative $649.60; (2) "increased burden of proof" damages in the amount of $100,000;[1] and (3) punitive damages in the amount of $300,000.

Butler moved for summary judgment on the ground that, even if she had made out a prima facie case for liability,[2] Ortiz's claim was moot because she could not recover any damages. The district court agreed, finding that Ortiz has not identified any damages she could recover if she were to prevail. The district court found that (1) Ortiz was not entitled to any compensatory damages because those claimed were offset by the NLRB settlement, (2) the "increased burden of proof" damages were not recoverable in a Title VII action, and (3) Ortiz had presented no evidence that would entitle her to punitive damages.

After the district court's grant of summary judgment, Ortiz filed a pro se notice of appeal. The notice names her as the appealing party, notes that Judge Holderman was the presiding judge, and sets forth the appropriate case number. The notice does not specifically state that Ortiz is appealing from the grant of summary judgment on mootness grounds, nor does it state the court to which Ortiz is appealing.

## II

### A

In reviewing a district court's grant of summary judgment, we assess the record *de novo* and reach our own conclusions regarding law and fact. *Thiele v. Norfolk &*

*Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir. 1995). We will not resolve factual disputes or weigh conflicting evidence. We will only determine whether a genuine issue of material·fact exists for trial, which is the case where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party. *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Where there is no genuine issue of material fact, the sole question is whether the moving party is entitled to judgment as a matter of law. If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir.1995).

### B

Before addressing the merits of this appeal, we must consider the argument raised by Butler that we lack jurisdiction over this appeal because Ortiz's notice of appeal fails to comply with the requirements of FED. R.APP.P. 3(c).

Rule 3(c) provides:

A notice of appeal must specify the party or parties taking the appeal by naming each appellant.... A notice of appeal also must designate the judgment, order, or part thereof appealed from, and must name the court to which the appeal is

---

1. Ortiz slipped and fell on Butler's premises eight months after she was terminated. Ortiz reasoned that had she remained employed at Butler she would have been able to file a worker's compensation claim, which has a lesser burden of proof than the common law negligence action that she actually filed. She valued the harm occasioned by this "increased burden of proof" at $100,000.

2. The district court denied a previous Butler motion for summary judgment in which Butler had argued that Ortiz had failed to make out a prima facie case. In its memorandum opinion and order denying that motion, the district court held that Ortiz had, in fact, made out a prima facie case of retaliatory discharge and that "a reasonable fact finder could conclude that plaintiff reasonably believed that she challenged conduct which violated Title VII and that she was terminated for her opposition."

taken. An appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

FED.R.APP.P. 3(c).

■ The Supreme Court has held that the requirements of Rule 3(c) are jurisdictional and "their satisfaction is a prerequisite to appellate review." *Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992); *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). Nevertheless, "mere technicalities" should not stand in the way of our consideration of the merits, and we will find a notice of appeal sufficient so long as it "is the functional equivalent of what the rule requires." *Torres,* 487 U.S. at 316–17, 108 S.Ct. at 2408–09.

■ We first consider the impact of Ortiz's failure to specifically state in the notice of appeal that she is appealing from the grant of the motion for summary judgment on mootness grounds. "[A]n error designating the judgment or a part thereof will not result in a loss of appeal if the intent to appeal from the judgment complained of may be inferred from the notice and if the appellee has not been misled by the defect." *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 625 (7th Cir.1993) (quoting *Cardoza v. Commodity Futures Trading Comm'n,* 768 F.2d 1542, 1546 (7th Cir.1985)). Although the notice does not specifically designate that Ortiz was appealing from the summary judgment on mootness grounds, such an inference is readily drawn from the text of the notice, which includes the statement that Ortiz "COMPLAINS THAT SHE HAS [A] PROBABILITY OF A TANGIBLE BENEFIT FROM WINNING THE SUIT." Because we cannot see how Butler was misled by the defect, we find that the notice of appeal was sufficient with respect to this element.

■ We next consider the fact that the notice of appeal failed to designate the court to which Ortiz was appealing. Although designation of the court to which the appeal is taken is a mandatory requirement under Rule 3(c), the defect is not fatal where the intention to appeal to a certain court may be inferred from the notice and the defect has not misled the appellee. *See United States v. Musa,* 946 F.2d 1297, 1301 (7th Cir.1991); *see also Anderson v. District of Columbia,* 72 F.3d 166, 168 (D.C.Cir.1995); *McLemore v. Landry,* 898 F.2d 996, 999 (5th Cir.), *cert. denied,* 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). It is sufficient for our purposes that Ortiz's intent to appeal to this court is evidenced by the fact that, except in circumstances not applicable to this case, this is the only court to which Ortiz could have appealed. *Musa,* 946 F.2d at 1301; *see also Anderson,* 72 F.3d at 168; *McLemore,* 898 F.2d at 999. Again, Butler has not shown that it was misled by the failure to make an explicit designation. Therefore, we may exercise jurisdiction over this appeal.

### III

■ A federal court's subject matter jurisdiction extends only to actual cases and controversies. *Powell v. McCormack,* 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969). A plaintiff seeking redress in a federal court must show "(1) an actual or threatened injury; (2) an injury that is 'fairly traceable' to the conduct; and (3) an injury that is likely to be redressed by a favorable decision." *Jorman v. Veterans Admin.,* 830 F.2d 1420, 1424 (7th Cir.1987). An injury is no longer redressable where "the parties lack a legally cognizable interest in the outcome." *Powell,* 395 U.S. at 496, 89 S.Ct. at 1951. Thus, where a plaintiff has received all of the requested relief to which she is legally entitled, there is no longer the requisite case or controversy, and the court is without jurisdiction. *See Cox v. Phelps Dodge Corp.,* 43 F.3d 1345, 1348 (10th Cir. 1994); *Harrison v. United Mine Workers of America,* 941 F.2d 1190, 1193 (11th Cir.1991).

The district court granted summary judgment in favor of Butler because it concluded that Ortiz had already received the compensatory damages she had requested and that the "increased burden of proof" damages and punitive damages were not available to her as a matter of law. Ortiz has affirmatively

abandoned her contention that she was entitled to the "increased burden of proof" damages. Thus, the only remaining questions are whether she was potentially entitled to any additional compensatory damages or to any punitive damages.

■ Ortiz raises several arguments for the proposition that she was entitled to compensatory damages over and above the lost wages and benefits that were offset by the NLRB settlement. However, Butler argues, and our review of the record confirms, that Ortiz raised these arguments for the first time on appeal. Ortiz has waived these arguments by failing to raise them before the district court, and we will not consider their relative merit. *Pozzie v. U.S. Dept. of Housing & Urban Dev.*, 48 F.3d 1026, 1030 n. 1 (7th Cir.1995).

Ortiz raises two arguments challenging the district court's conclusion that she was not entitled to punitive damages. First, she argues that the district court applied an incorrect standard for determining when employers may be liable for punitive damages under Title VII. Second, she argues that there was a genuine issue of material fact as to whether she was entitled to punitive damages.

■ Citing to *Hudson v. Soft Sheen Products, Inc.*, 873 F.Supp. 132, 136 (N.D.Ill. 1995), which discussed the legislative history of the Civil Rights Act of 1991, and *Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994), the district court stated its conception of what a plaintiff must show to be entitled to punitive damages:

> Although punitive damages may properly be awarded in Title VII retaliatory discharge cases, they are only appropriate in an egregious case of intentional discrimination when the defendant engaged in the unlawful employment practice with actual malice, or with reckless indifference as to indicate a wanton disregard for the rights of others.

Ortiz argues that the district court erred by actually articulating the Illinois standard for punitive damages, which is what we applied in *Jackson,* a diversity case. As we recently noted, whether punitive damages are available in a Title VII case is a question of federal law and does not concern the avail-ability of punitive damages at state law. *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir.1995).

■ The statute itself prescribes the proper standard for awarding punitive damages:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). Although the district court's articulation of the showing required for entitlement to punitive damages differs to some extent from the one contained in the statute (42 U.S.C. § 1981a(a)(2) sets forth the requirement that the discrimination be intentional), the deviation is not significant. In any event, Ortiz remains unable to show that there is a genuine issue of material fact that she would be entitled to punitive, damages.

The district court concluded that Ortiz had failed to present any evidence that Butler terminated her employment with malice or reckless indifference to her protected rights, and we agree. Among the uncontested facts is the following statement concerning Butler's reason for terminating her: "Plaintiff was first suspended and later discharged because Defendant believed that Plaintiff had intentionally and maliciously filed baseless charges against her supervisors and Plaintiff refused to admit that she had falsely accused her supervisors of sexual harassment."

■ Ortiz argues that even though Butler fired her because it believed she had intentionally asserted baseless charges that does not mean the charges were, in fact, baseless and Butler's belief that the charges were baseless should not be sufficient to rebut a prima facie case of retaliatory discharge. Ortiz's arguments relate to Butler's liability in the first instance, which is distinct from Butler's liability for punitive damages.

The requisite showing for punitive damages necessarily focuses upon the defendant's state of mind to discern the presence of malice or reckless indifference to the plaintiff's protected rights. And the evidence as to Butler's intent can only support the inference that Butler fired her because it sincerely believed she had intentionally asserted baseless charges.

Ortiz has also presented no evidence that impugns the fairness of the audit that Butler conducted to investigate the charges in the letters. Ortiz argues in her brief, without any citation to the record, that there is evidence that the audit was not conducted anonymously and that several employees were intimidated by the audit process. Ortiz also offers considerable speculation concerning a number of "possible triable factual questions." Speculation is insufficient to withstand summary judgment; the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). And even if we could locate Ortiz's evidence, it is insufficient to raise a genuine issue of material fact that Butler terminated her with malice or reckless indifference to her federally protected rights.

For the foregoing reasons, the judgment is AFFIRMED.